FREDERICK A. BARTRAM *vs.* THE CITY OF BRIDGEPORT.

Fairfield Co., March T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A city charter authorized the common council, by itself or by a committee appointed by it, to assess damages and benefits for city improvements. A committee appointed by the mayor and not by the council made certain assessments and reported them to the council, which accepted the report and adopted the assessments. Held that the action of the council in adopting the assessment made by the committee was in law the making of an assessment by itself, and was not affected by the want of authority in the committee to act in the matter.

[Argued March 17th—decided May 5th, 1887.]

COMPLAINT for the annulment of an assessment for benefits from a city improvement; brought to the Court of Common Pleas in Fairfield County. The defendant demurred to the complaint and the case was reserved for the advice of this court. The case is fully stated in the opinion.

*C. Thompson*, in support of the demurrer.

*G. Stoddard*, contra.

PARDEE, J. The plaintiff was assessed in the sum of $161$\frac{26}{100}$ as his proper proportion of benefits resulting from the pavement of Water street in the city of Bridgeport. He asks an annulment of the assessment, saying that it is illegal and void for the reason that it was neither made by the court of common council acting by themselves nor by a committee appointed by the council for that purpose. The defendant demurs to the complaint. The case is reserved for the advice of this court.

On January 4th, 1886, the common council of the city of Bridgeport, upon the recommendation of the board of public works of that city, authorized that board to perform the work of paving Water street with stone block pavement, from Fairfield avenue to South avenue. On October 13th, 1886, the board reported to the common council the completion of the work, and that it was desirable that the proper amounts should be assessed upon property benefited by the improvement as soon as possible, and it was recommended that the mayor be authorized to appoint a committee for that purpose. Thereupon on motion of some member of the council the report was accepted and its recommendation adopted.

Some time between October 13th and December 6th, 1886, the mayor appointed Franklin Sherwood, John Sexton and William H. Lacey to make the assessment. On December 6th the mayor announced to the common council that he had appointed such persons assessors on the Water street pavement. The committee, having meantime made the assessment, on December 6th, 1886, made report of their doings to the common council. The report was read and continued until the next regular meeting of the common council and was published in its proceedings. At the next regular meeting, held on January 3d, 1887, the minutes of the previous meeting were approved and the report was taken up, read and accepted, and the assessments contained therein confirmed, adopted and duly recorded; and due notice was given to the property holders of the sums assessed upon them respectively, and of the time when

the same became due. In that report the committee said that the plaintiff had been benefited to the extent of $161$\frac{26}{100}$ by the laying of the pavement.

The charter of the city of Bridgeport provides as follows:—

Sec. 36. "Said common council may, whenever in its opinion the public good shall require, order that any street or streets, highway or highways, now or hereafter existing in said city, shall be paved, * * * and may, upon the execution of any such order, assess upon the persons whose property is especially benefited thereby, one half of such expense, and may estimate and assess the particular amount of such expense to be paid by every such person; and notice of such improvement shall be given, and the assessments therefor shall be made, published, collected or secured, as the case may be, in the same manner as hereinafter provided and required in the case of sewers."

Sec. 39. "And in all proceedings concerning the construction or purchase of sewers, and assessments of costs, damages and benefits, said common council may act by themselves or by a committee by them appointed for that purpose."

By the charter, therefore, the members of the court of common council lawfully assembled have the power to make a valid assessment; each one may act upon his individual judgment; that judgment may rest upon knowledge acquired by separate investigation, upon knowledge acquired at any time, in any manner and in any degree, according to his conscience in the matter. Assuming the report of the so-called committee to be nothing more than an expression of opinion by individuals without authority, each member of the council could lawfully adopt its conclusions, give them a controlling effect upon his mind, make them his own, and embody them in his vote. He was under no obligation to push investigation further. Although each member had joined in a void vote to raise a committee to make the assessment, although each member believed that a committee had been lawfully appointed and that its assessment was valid, and although the vote of each member to adopt the

assessment of the committee against the plaintiff was given in the belief that whatever the committee had done was in conformity to law, yet the vote of the council to adopt the apportionment recommended in the report constituted an order or decree which it had power to make, that the plaintiff should be assessed and should pay $161$\frac{26}{100}$ for benefits received. Whether that which went before was valid or void is of no moment. The assessment came into existence by virtue of the creative power of that vote alone. Each member formed an opinion and expressed it officially in due form; and the plaintiff is entitled to nothing more.

The Court of Common Pleas is advised that the complaint is insufficient.

In this opinion the other judges concurred.